UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MANUEL VALLEJO, | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) |
| | ) Civil Action No. SA-12-CA-270-XR |
| NORTH EAST INDEPENDENT SCHOOL DISTRICT, | ) ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this date, the Court considered Defendant's Motion for Summary Judgment (docket no. 29), Plaintiff's Response (docket no. 32), Defendant's Reply (docket no. 33), Defendant's Objections to Plaintiff's Summary Judgment Evidence (docket no. 34), and Plaintiff's Response to Defendant's Objections (docket no. 35). For the reasons stated below, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

**Factual and Legal Background**

Plaintiff Manuel Vallejo worked for Defendant North East Independent School District (NEISD) as a Materials Handler from September 1985 until his resignation on August 9, 2011. For the last eight years of his employment, Vallejo worked under the supervision of Roderick Jackson, the General Warehouse supervisor. Vallejo's general duties included delivering supplies, filling orders, receiving, distributing, property transfer, textbook pick up and delivery, auctions, and inventory. The regular work schedule was 7:00 a.m. to 4:00 p.m. each day.

NEISD uses the KRONOS system to track employee hours, a computerized system in which employees swipe their badge at the beginning and end of each work day to track hours worked. If there are any difficulties or discrepancies in swiping in or out of the KRONOS system, employees can fill out a separate "punch change form" for supervisor approval of the changes. Employees can review and approve their hours worked during a pay period. Supervisors also have the ability to adjust employee time cards. Vallejo claims that Jackson would, at times, approve the hours before

Vallejo had the opportunity to review and approve the timecard himself (Vallejo Depo. at 26).[1] Only supervisors had access to the KRONOS system after the timecard was approved.

Vallejo alleges that he began noticing discrepancies in his paychecks around 2008. Vallejo claims that some of his paychecks did not include payment for hours of overtime worked (Vallejo Depo. at 20). Vallejo suggests that he always reported the overtime that he performed throughout the pay period in KRONOS, but noticed that his paychecks did not reflect the amount of hours that he had clocked in (Vallejo Depo. at 19-20). Vallejo alleges that his overtime varied depending on the workload and projects that were occurring during any given week (Vallejo Depo. at 18). Vallejo claims that he spoke with Jackson on several occasions regarding the missing overtime payment, but that Jackson assured him the hours were correctly recorded and compensated (Vallejo Depo. at 20). Vallejo then spoke to Lupie Padilla, a payroll specialist, on several occasions throughout 2008 to 2011 regarding the overtime payment issues (Vallejo Depo. at 21; Padilla Depo. at 7).[2] Vallejo asserts that at least twice a month his paychecks were incorrectly calculated (Vallejo Depo. at 25).

Vallejo reported the timecard discrepancies to Senior Payroll Services Manager Emma Jackson on or about May 2, 2011. Although Vallejo did not state at that time that Mr. Jackson was violating the FLSA, Vallejo asked Ms. Jackson to remind his supervisor, Roderick Jackson to comply with the "procedures and policies of changing time on the clock and stuff." (Vallejo Depo. at 28). Emma Jackson looked into Vallejo's request and found that corrections had been made to Vallejo's timecard for the previous week, and notified David Bohannon, NEISD's Director of Procurement and e-Commerce, and Mildred Balanciere, Director of Classified Personnel. Ms. Jackson held a training session for Mr. Jackson and other department supervisors regarding proper timekeeping procedures on May 3, 2011. During this training, Ms. Jackson provided details of the NEISD's timekeeping policies and wage payment requirements under the FLSA (Jackson Aff. para. 7).[3]

Following the training, Bohannon and Ms. Jackson met with Mr. Jackson, at which time Mr.

---

[1] Exhibit 11, Defendant's motion for summary judgment, Doc 29-2.

[2] Exhibit 5, Plaintiff's response to motion for summary judgment, Doc 32-5.

[3] Exhibit 3 Part A, Defendant's motion for summary judgment, Doc 29-8.

Jackson admitted that he had altered his employees' time cards because it was his understanding that NEISD did not allow employees to be compensated for unapproved overtime (Jackson Aff. para. 8). Bohannon and Ms. Jackson clarified that NEISD's policy was to not allow unapproved accumulation of overtime, but that overtime worked must be compensated regardless of whether it was approved. Mr. Jackson claims he was unaware that he may have violated the FLSA and it was not his intent to do so (Jackson Aff. para. 9). Mr. Jackson further states that he has never received a directive from NEISD instructing him to violate timekeeping policies or violate the FLSA (Jackson Aff. para. 11-12).

During this time, Ms. Jackson also conducted an internal audit regarding the timecard entries over the previous two years, 2009-2011, for all employees in Mr. Jackson's department. The audit revealed that the time cards of several employees had been improperly altered. Affected employees were paid all amounts due as reflected by the changes made in KRONOS; Vallejo was paid $32.78 for the unpaid overtime due to the altered time cards. Vallejo disagrees with the amount paid to him (Vallejo Depo. at 30).

Ms. Jackson is not aware of any complaints regarding improper timecard editing since May of 2011. (E. Jackson Depo. at 18 ).[4]

Despite having an excellent work record, on May 3, 2011, Vallejo received a memorandum from Mr. Jackson, noting that Vallejo was being reprimanded for tardies and poor work performance. The parties dispute whether Mr. Jackson knew of Vallejo's conversation with Ms. Jackson regarding overtime payments the previous day (Vallejo Depo. at 44 LL 10-12). Mr. Jackson claims the conversation with Ms. Jackson and Bohannon did not influence his decision to reprimand Vallejo (Jackson Aff. para. 13).

On May 5, Mr. Jackson held a meeting with his employees. Vallejo alleges that Mr. Jackson was upset at that meeting, told employees that there would be no exceptions for reporting to work tardy, three write-ups would lead to automatic termination, that if the employees did not like it that he would "meet them on the other side," and told employees that "one bad apple ruins it for everybody" (Vallejo Depo. at 53). After the meeting Mr. Jackson and General Manager Mike

---

[4]Exhibit 4, petitioner's response to motion for summary judgment, Doc 32-4.

Williams met with Vallejo. Mr. Jackson demanded to know why Vallejo "went over his head" and failed to follow the "chain of command" by complaining directly to Ms. Jackson (Vallejo Depo. at 54). Vallejo was thereafter issued a written reprimand. Ms. Jackson testified that she welcomed employees coming directly to her with payroll issues (E. Jackson Depo. at 12) and was not aware of any formal or informal policy of an employee being required to first address the issue with his or her direct supervisor first (E. Jackson Depo. at 21).

Vallejo states that in the months following this exchange, every day he was required to perform jobs for which he was typically not responsible, such as unloading trucks by himself, sweeping the parking lot, and picking up the trash in the parking lot (Vallejo Depo. at 61). Furthermore, Vallejo claims he was given more jobs to perform alone, more routes, and more schools without allowance of extra time to complete these jobs (Vallejo Depo. at 61).

On August 2, 2011, Vallejo was assigned to pick up property from a middle school campus. Mr. Jackson went to the school to check on the property, at which time Vallejo confronted Jackson about "checking up on him." After he finished his work, Vallejo went to Mr. Jackson's office and stated, "I'm tired of this f _ _ _ _ ing shit, you checking up on me." Vallejo claims, however, that at the end of their meeting, he and Mr. Jackson shook hands and hugged and Mr. Jackson assured Vallejo that he was doing a good job (Vallejo Depo. at 71-72).

Mr. Jackson reported Vallejo's conduct to Reid Henry, NEISD's former Assistant Director of Procurement and e-Commerce, who in turn reported the incident to Bohannon and Balanciere. After an investigation, Balanciere determined that Vallejo's use of profanity and disrespect warranted termination. She had personally terminated other employees for similar behavior (Balanciere Aff. para. 9).[5] Henry provided Balanciere with a recommendation to terminate Vallejo because Vallejo had violated NEISD's expectations for employee conduct, namely that Vallejo did not avoid using profane, vulgar, or slanderous language and was insubordinate (Balanciere Aff. para. 9). Balanciere testified that the decision to terminate Vallejo's employment was based solely on Vallejo's outburst toward Mr. Jackson and was not influenced by Vallejo's overtime discrepancy reporting (Balanciere Aff. para. 13, 14, 17).

---

[5]Exhibit 2, Part A Defendant's motion for summary judgment, Doc 29-6.

On August 9, 2011, Balanciere and Henry discussed the recommendation to terminate employment with Vallejo. At the conclusion of the meeting, Vallejo resigned in lieu of termination. Vallejo now claims that he did not want to resign, but did so at the recommendation of Balanciere, who informed Vallejo that his future employment opportunities could be jeopardized if he were terminated (Vallejo Depo. at 95). Vallejo admits that he would not have been fired had he not cursed at Mr. Jackson (Vallejo Depo. at 97).

Vallejo's original complaint, filed March 23, 2012, alleges that NEISD denied him overtime payments, a violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206(a) and 207(a)(1). Vallejo further alleges that the violations of the FLSA were willful. *See* 29 U.S.C. § 255(a). Vallejo also claims that he suffered retaliation as a result of reporting the time card deficiencies and was forced to resign, a violation of the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3). He seeks reinstatement, injunctive relief, promotion, and the payment of lost wages, emotional distress, mental anguish damages, liquidated damages, and attorney's fees. On April 1, 2013, Defendant NEISD filed the instant Motion for Summary Judgment.

**Standard of Review**

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant or that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this

determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). A nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004). Furthermore, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## Analysis

### I. Unpaid overtime claim

*1. Overtime extent and amount*

NEISD argues that, as a matter of law, Plaintiff has failed to produce sufficient evidence to show the amount and extent of overtime work as a matter of "just and reasonable inference."

The evidence of hours worked need not be perfectly accurate as long as it provides a sufficient basis to calculate the number of hours worked. *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 599 (5th Cir.1979). "If the employer's records are 'proper and accurate,' the employee may rely on these records; if the employer's records are 'inaccurate or inadequate,' the employee may produce 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Rosales v. Lore*, 149 F. App'x 245, 246 (5th Cir. 2005) (internal citation omitted). "If the employee does so, the employer must 'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn for the employee's evidence." *Id.*

As stated above, in this case Defendant concedes that the original time records were incorrect inasmuch as Mr. Jackson incorrectly deducted overtime hours actually worked. NEISD thereafter reviewed its time records from May 2009 through April 2011, adjusted its time records and credited

Plaintiff with $32.78.[6]

Plaintiff testified in his deposition that he is unable to specify with exactness how much overtime he actually worked. When the Fall school session opened, Plaintiff testified they would work overtime. On occasions auctions were held. In addition, if a school encountered flooding or furniture needed to be moved, Plaintiff claims overtime hours were worked.[7]

Relying upon *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. App'x 448 (5th Cir. 2009), NEISD argues that Plaintiff has failed to produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" under the standard laid out in *Anderson*. NEISD's reliance upon *Von Friewalde*, however, is misplaced. That case involved claims of work that was "de minimis" in nature. There is a genuine dispute regarding the number of uncompensated overtime hours the Plaintiff worked. The Court acknowledges that case law is unclear as to what evidence, and what quality of evidence, is needed to be produced by the parties. NEISD argues that its records were reviewed after Plaintiff's complaint was received and its calculation of a $32.78 shortage, which it subsequently paid, is accurate. Plaintiff argues that the payroll records remain inaccurate and has testified as to the amount of overtime hours he claims he actually worked. NEISD argues that the mere testimony of Plaintiff, with no supporting notes or calendar notations, does not amount to "sufficient evidence to show the amount and extent of [overtime] work as a matter of just and reasonable inference."

It remains unclear how Plaintiff contends he is entitled to more overtime than NEISD has already paid. It is, however, also unclear how NEISD conducted its review of Plaintiff's time records. Plaintiff testified that he would "swipe" his badge into the KRONOS system at check in and

---

[6] Apparently, Mr. Jackson thought employees were required to seek authorization to work overtime and that if they failed to secure advanced authorization he was entitled to remove overtime hours from their payroll records. Ms. Jackson determined what time records had been altered by Mr. Jackson and restored that time to the impacted employees. The records altered by Mr. Jackson were not provided to the Court.

[7] "It's just hard for me to calculate how much overtime because, like I said, there's different - - we had different functions and different things going on.... There could have been - - in a month it could have been from 10 hours; it could have been 12 hours; could have been two hours. It depends on the month and depends on the - - on what project we had going on that month." Plaintiff's Depo. at p. 34.

"swipe" out at the end of the day.  If that was the case, Plaintiff's time records should have captured all the overtime Plaintiff claims he worked opening schools for the Fall session, moving furniture, etc.  Plaintiff's counsel seemed to imply in his deposition questioning that Plaintiff was improperly deducted lunch hours when he was actually working; however, no clear answers resulted from those inquiries.  Because NEISD failed to adequately explain how it concluded that $32.78 was the correct amount of overtime wages owed, and this explanation seems so contrary to the remaining evidence regarding how Mr. Jackson was improperly deducting overtime hours from the payroll records, the Court concludes that Plaintiff has sufficiently established that he may have worked overtime hours for which he was not paid to survive summary judgment.

*2. Willful violation*

Vallejo further claims that NEISD willfully violated the FLSA, which, as a result, would entitle Vallejo to three years of accrued, unpaid overtime pay. FLSA claims generally have a two year statute of limitations. 29 U.S.C.§ 255(a).

The plaintiff bears the burden of proving a willful violation of the FLSA. *Stokes v. BWXT Pantex, L.L.C.*, 424 Fed. App'x 324, 326 (5th Cir. 2011) (per curiam). FLSA violations "are willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)); *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994).

Vallejo has not established that NEISD knew of or showed reckless disregard for overtime pay discrepancies. Although Mr. Jackson acknowledges changing employee time cards within his division so that they did not reflect overtime actually worked, these changes were made due to a mistaken interpretation of the NEISD overtime policy on unapproved overtime, not a knowing violation of the FLSA. Once the overtime payment discrepancies were brought to the attention of Ms. Jackson, the NEISD policy of paying all hours worked, even if it was unapproved overtime, was confirmed with all department supervisors and uncompensated overtime was distributed to all who had been improperly compensated. Because the overtime payment issue was remedied immediately upon NEISD management learning of the problem, Vallejo has not proven that this was a willful violation of the FLSA.

Unlike *Reich*, in which overtime payment practices that were in violation of the FLSA continued without further investigation, even after the payroll management was notified of overtime compensation discrepancies, NEISD immediately investigated the claim and took further steps to prevent any violation of the FLSA. *Reich*, 23 F.3d at 117. Summary judgment is granted to Defendant on this issue.

"On the other hand, an employer who violates the FLSA is liable for liquidated damages equal to the unpaid overtime compensation unless, after concluding that the employer acted in "good faith" and had "reasonable grounds" to believe that its actions complied with the FLSA, the district court declines to award liquidated damages (or reduces the amount). 29 U.S.C. § 260." *Stokes v. BWXT Pantex, L.L.C.*, 424 Fed. Appx. at 326. The Fifth Circuit has concluded "that demonstrating good faith and reasonable grounds is a 'substantial burden' borne by the employer. *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir.1998)." *Stokes v. BWXT Pantex, L.L.C.*, *supra*. The Fifth Circuit does not "read the 'good faith' and 'willful' provisions together." *Id.* Inasmuch as Defendant has only sought summary judgment on the issue of willfulness, summary judgment is denied on the issue of liquidated damages. Should the Plaintiff prevail on any award of actual damages, the Court will then apply the "good faith" analysis.

## II.     Retaliation claim

Vallejo claims that once he reported NEISD's failure to pay him overtime, he experienced retaliation and was forced to resign in lieu of termination. It is unlawful for an employer to discharge or discriminate against an employee who has filed a complaint of an FLSA violation. 29 U.S.C. § 215(a)(3).

The Fifth Circuit has held that, in the summary judgment context, the framework for analyzing an FLSA retaliation claims is analogous to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for Title VII retaliation claims. *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 575 (5th Cir. 2004) (citing *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 285 (5th Cir. 1986)).

To establish a *prima facie* case on an FLSA retaliation claim, the plaintiff must show that (1) he participated in a protected activity under the FLSA; (2) he suffered an adverse employment action; and (3) there is a causal link between the activity and the adverse action. *Hagan v. Echostar Satellite,*

*L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).

Once the plaintiff meets this initial burden, the burden then shifts to the defendant to produce a legitimate, non-retaliatory reason for the alleged adverse employment action. *Id.* The burden then shifts back to the plaintiff to establish that the proffered reason for the adverse employment action was pretext for retaliation or discrimination. *Hagan*, 529 F.3d at 624. In other words, the plaintiff must show that but for the plaintiff engaging in a protected activity, the adverse employment action never would have occurred. *Kanida*, 363 F.3d at 583.

*1. FLSA-Protected Activity*

Vallejo argues that his reporting of the discrepancies regarding overtime payment to Padilla and Ms. Jackson was a protected activity under the FLSA. The Fifth Circuit has noted that informal, internal complaints may be protected under the FLSA in order to better promote the anti-retaliation nature of the FLSA. *Hagan*, 529 F.3d at 626. Similarly, the Supreme Court has held that oral, informal complaints are a protected activity for purposes of the National Labor Relations Act. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1333 (2011). While *Hagan* recognizes that precedent does not establish clear qualifications for an informal complaint, it does note that the complaint must concern some violation of law and "not all abstract grumblings or vague expressions of discontent are actionable complaints." *Hagan*, 529 F.3d at 626. Additionally, to prove that a complaint was protected activity, the employee must give the employer "'fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation' and the 'complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection.'" *Lasater v. Tex. A&M Univ.-Commerce*, 495 Fed. App'x 458, 461 (5th Cir. 2012), *cert. denied*, 2013 WL 1841588, 81 USLW 3643 (U.S. Jun 10, 2013) (citing *Kasten*, 131 S. Ct. at 1334-35).

Vallejo's complaints to Mr. Jackson, Padilla, and Ms. Jackson satisfy the requirements of an activity protected under the FLSA. Despite Vallejo not filing a formal grievance, but rather personally speaking to each of these supervisors and managers, this informal complaint can rise to the level of a protected activity. Although Vallejo did not phrase his complaint in terms of a potential FLSA violation, from the record it is evident that Vallejo was clear in his communication that he was

concerned with the nonpayment of his alleged overtime and that he believed Mr. Jackson was altering Vallejo's timecard inappropriately. By confronting Mr. Jackson on numerous occasions and speaking to payroll management, Vallejo adequately put NEISD on notice that he was concerned with his rights to receive compensation for the time that he had actually worked.

*2. Causal link between protected activity and adverse employment action*

    *a.    harassment claim*

After Plaintiff spoke with Senior Payroll Services Manager Emma Jackson on May 2, 2011, Vallejo was given a written reprimand for tardiness on May 3 by Mr. Jackson. Plaintiff had never been given a written reprimand for tardiness before. Although NEISD argues that Mr. Jackson was not aware of the May 2 visit, Plaintiff testified that Ms. Jackson told him that she was going to call Mr. Jackson that same day. Ms. Jackson's affidavit is vague as to whether she did or did not speak or leave a message with Mr. Jackson on May 2. On May 5, after talking with Ms. Jackson, Mr. Jackson called a meeting of all his employees, told them that all infractions were going to be documented, that after three infractions an employee would be fired, that "one bad apple ruins it for everybody," and that if the employees "did not like it that he could meet us on the other side." Plaintiff construed that last remark as a threat. After the employee meeting, Plaintiff was asked to meet with Mr. Jackson and the warehouse general manager, Mike Williams. Mr. Jackson was upset at that meeting and demanded to know why Plaintiff "went over his head."

Thereafter, Plaintiff testified he was required to work bigger routes with no assistance, required to unload trucks by himself, instructed to sweep the parking lot and pick up trash. He was never required to perform these tasks previously.

An adverse employment action is one that might have dissuaded a reasonable person from engaging in the protected activity. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). However, "context matters," and only materially adverse claims, not trivial harms, are to be treated as an adverse employment action. *Id*. at 69.

A genuine issue of material fact exists as to whether the challenged acts were materially adverse. A jury could reasonably conclude that the challenged conduct might well have dissuaded a reasonable worker from complaining about improper wage payments. Summary judgment is denied on the issue of harassment, but the Court will now turn to an analysis of the "constructive

discharge" claim.

    b.  *constructive discharge claim*

    Constructive discharge claims are assessed by the objective standard of whether a "reasonable employee would feel compelled to resign" under the circumstances. *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008). The evidence "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Id.*

    As stated above, Plaintiff was going to be discharged for using profanity and being disrespectful to his supervisor. Plaintiff was given the opportunity to resign in lieu of termination. Plaintiff fails to establish that his working conditions were so intolerable that a reasonable person would have been compelled to resign. Plaintiff has failed to establish a "constructive discharge" claim. In the alternative, as discussed below, NEISD has established a non-retaliatory reason for Plaintiff's discharge. Summary judgment is granted in favor of NEISD as to Plaintiff's "constructive discharge" claim.

    *3. Evidence of Pretext*

    Once the plaintiff has established the prima facie case for retaliation, the burden shifts to the defendant to provide a non-retaliatory reason for the adverse employment action. *Hagan*, 529 F. 3d at 624. Once that reason has been given, the burden shifts back to the plaintiff to prove both that the proffered reason was false or merely a pretext and that the retaliation was the real reason for the decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993).

    Pretext may be shown when "the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). Departures from normal policy enacted by the employer may be evidence of pretext. *Vill. of Arlington Heights v. Metro. Hous Dev. Corp.*, 429 U.S. 252, 267 (1977); *Boehms v. Crowell*, 139 F.3d 452, 459 (5th Cir. 1998). However, a subjective belief about the basis for an adverse employment action is not sufficient to establish that the nonretaliatory reason for adverse employment action proffered is false. *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985) (citing *Elliot v. Group Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983)); *EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir.

1984).

With regard to the harassment claim, Plaintiff has established that there was an immediate nexus in time between the overtime complaint and the harassment actions. Further, Plaintiff began to receive reprimands, when he had never been disciplined previously. Further, Plaintiff provided evidence that Mr. Jackson called him a "bad apple" immediately after the overtime complaint was lodged. NEISD has failed to provide a non-retaliatory reason for the harassment. *Hagan*, 529 F. 3d at 624. In the alternative, Plaintiff has raised a material fact question as to whether any proffered reasons were false or merely pretextual, and that retaliation was the real reason for the harassment.

With regard to the constructive discharge claim, as stated above, Plaintiff was fired for cursing at his supervisor. Plaintiff does not deny cursing at Mr. Jackson. Mildred Balanciere, Director of Classified Personnel, testified that upon learning of Vallejo's use of profanity and insubordination, she and other management officials decided to terminate Vallejo's employment. She further testified that other employees had been fired for similar conduct in the past. Vallejo has not shown that the recommendation that he be terminated was uncommon or contrary to normal NEISD policy, or that he was treated differently than other employees in similar circumstances. Further, Vallejo admits that he would still be working for NEISD had he not engaged in the inappropriate conduct. As such, Vallejo's own testimony negates the existence of a pretextual reason for his forced resignation. Summary judgment is granted to NEISD on the "constructive discharge" claim.

## Conclusion

There is a genuine dispute regarding the number of uncompensated overtime hours the Plaintiff worked. Should the Plaintiff prevail on any award of actual damages, the Court will then apply the "good faith" analysis to determine whether liquidated damages should be awarded. Vallejo has not proven, however, a willful violation of the FLSA.

With regard to the FLSA retaliation claim, a genuine issue of material fact exists as to whether the alleged "harassing" acts were materially adverse. Summary judgment, however, is granted to NEISD on the "constructive discharge" claim. Accordingly, should this case proceed to trial, retaliation damages will be limited to the period May 3, 2011 to August 1, 2011.

It is so ORDERED.

SIGNED this 17th day of June, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE